Good morning, Your Honors. May it please the Court, my name is Dana Cotham, and I represent Anna Vallee Swan in the matter before you, which is not an immigration matter, this is an age discrimination matter, and I would like to reserve five minutes for rebuttal if I may. So why are we here today? I find myself asking that question this morning, certainly as 10 o'clock approached even more so, and to put it briefly, I have some issues with the case, and I find that we're here today simply because of disputed facts. As I reviewed the record, something just doesn't make sense to me. In fact, many things don't make sense to me. As I pondered and reviewed it, it became clear that certainly Ms. Swan's initial hurdle here is her prima facie case. And if you review the district court judge's ruling on the prima facie case issue, he ruled that Ms. Swan met every element but one, the one concerning whether Ms. Swan was at least at a minimum as qualified as her 30-year-old replacement. And I would represent to this court that the judge's finding concerning her qualifications was itself a finding of disputed fact. First of all, there's nothing in the record defining what the actual qualifications for the assistant banking center manager, we'll say ABCM for brevity, there's just nothing in the record. Here's what is in the record. Ms. Swan's 30-year-old replacement performed the tasks of an ABCM with Bank of America for approximately 18 months, she worked in a branch with heavy foot traffic, and she speaks Spanish. Keeping those three qualifications in mind, Ms. Swan needed to prove to meet her prima facie case that she was at least as qualified as that. Now, the record shows that while her replacement was employed by the bank for three years and was an ABCM for approximately 18 months, Ms. Swan worked for the bank for 17 years and worked as an ABCM for 15 years. Your brief said that she had this stellar employment record, but does that overlook the numerous – does that fail to characterize the numerous incidents in which they found fault with her performance? She was, in fact, disciplined, Judge Cowan, in her final year of employment, which is – Final year, but on numerous written warnings that she had received prior to her final discharge. The numerous written warnings that the bank would refer to would be the total of three over the course of her last year. The previous discipline was 14 years prior to that. Counsel, there's no question that your client had more experience in working in banks. 17 years is a larger number than three years. How many years does it take to become proficient at a position as a teller at a bank? To become proficient as a teller, I would suggest weeks or months. To become proficient as an ABCM, well, that's an interesting question, Judge Bybee, because there is no job description in the record. At some point, your client will always be ahead of somebody else. There's always going to be somebody behind her that's going to be – that's going to have less experience. But simply comparing the numbers and saying this number is larger than that number doesn't really tell us whether the replacement was less qualified because she had fewer years at the bank. Absolutely. I would agree with you wholeheartedly. And it's not exclusively her tenure. Her nearly two decades of tenure is just the beginning. When you start evaluating, and if you look at Ms. Yaunin's – in the record, what the three things are stated, her speaking of Spanish, her 18 months, and her heavy foot traffic – This was a branch where? On Maryland Parkway? The Paradise Valley branch. Paradise Valley branch, which is where? On Maryland Parkway, I believe. I think the University branch is – I'm sorry, Your Honor, I don't remember the exact location. I believe it's Maryland Parkway. That's the University branch, I believe. And so the replacement has these three things in the record. Now, you're right. 17 years in and of itself does not prove that she's superior in her qualification. Particularly where at the end of her tenure, she's terminated for poor performance. For performance, not qualifications. Well, if someone is terminated for poor performance, then they can be replaced. And if there's nothing wrong with the termination, then I don't even understand how we get to the point of looking at the qualifications of the replacement if she was properly terminated. Well, that, I believe, Your Honor, with all due respect, is putting the cart before the horse. She has to prove that she was at least equally qualified as a replacement before performance even becomes an issue. And to show – if you compare the two with the three for her – Well, let's take a more dramatic example. Let's suppose that a 15-year employee, not even at a bank, let's make it a store that sells tires. And someone has worked there for 15 years, but they are caught stealing and they're fired. And they're replaced. What difference does it make who replaced them, whether they had no experience and were younger? They were going to be in a trainee program. The fact that they were properly terminated seems to me to cut off any rights to complain about who was hired instead. Well, the four elements of a prima facie case don't look at whether or not she was stealing. They look at whether she was over the age of 40, which the district court judge found. It's undisputed. Whether she was performing satisfactorily, which the district court ruled. It's undisputed. Whether or not she was – Well, that's what I'm disputing, I guess. If someone has been terminated legitimately, how could they have been performing satisfactorily?  Someone can be qualified and steal. You can have somebody who meets the utmost of qualifications and turn around and – Well, I think honesty would count as a qualification. But let's – I guess I'm just having conceptual difficulty with – if there's no discriminatory motive for the termination, I don't understand how any of the rest of the claim even survives. But that's just my quandary. You should go ahead and explain to my colleagues what I'm saying. I feel the same way. I feel as if the pretext issue kind of gets blended into the prima facie elements. And so I wanted to be very clear about the four prima facie elements, because if we don't meet that hurdle on the record, then there really is no discussion about pretext and performance in the discipline, et cetera. And so we are asserting that Ms. Swan, in addition to her tenure, which speaks for itself, that could almost make an argument, notwithstanding discipline, that she would at least be equally qualified. But she also possessed a bachelor of science degree in accounting. She also rose through the ranks within the bank, earning the title of assistant banking center manager and vice president. And she was hand-selected to evaluate banks' abilities to pass their – or branches' abilities to pass their audits, which is clearly an important function for the bank. Yeah, but they discharge her according to their claim because she wasn't able to – or doing the job. And we're – I beg your pardon. Okay. They discharge her because they claim she wasn't doing the job. She couldn't or wouldn't do the job, regardless of what she claimed her qualifications were. And that's an excellent point. Couldn't or wouldn't. Yeah, but the question for us is, what evidence was there that was before the court to submit to a jury which contradicted whether she was or was not qualified, that they made a bona fide decision that she could not or would not do the job? In other words, they may have made a mistake by firing her, but that's not before us. We don't run an employment office. What did you put in to ward off summary judgment to show that their decision, which they made, which could have been right or wrong, was not made in good faith, that they really didn't think when they said that she was unqualified and she couldn't do the job, that that wasn't a truth – a truthful position that they were taking? It's my understanding that the bank's main contention that separates her 30-year-old replacement from my client is that the replacement spoke Spanish, which was a skill set that better suited the branch. That's the main factual dispute here. No, no, no. I think the main factual dispute, unless I missed the boat on this one, is that they discharged her because they didn't think she was doing the job. And so the question before the court, as far as I'm concerned, is that hopefully they replaced her with someone that could do the job, but we're not interested in who they replaced her with. We want to know whether that decision they made was a reasonable, good-faith business decision on their – that they thought they were making, not whether they made an actual good decision, but whether they thought they were making a good decision or they were making that decision in bad faith to get someone that was going to do the job for a reason. Judge, I have to respectfully disagree about the replacement because that's our fourth element and the judge ruled against us. And if we don't meet that fourth element at prima facie, then all of the pretextual assertions are moved. We have to meet that prima facie element. And the fourth element is, was she replaced by someone significantly younger than her who was at least more qualified? Let me understand you correctly. So your position is, if someone is not doing the job that they're hired to do, that they can't be discharged for that failure unless they replace that non-performing employee with someone who's got the same qualifications and the ability and so forth, at least of the person who's not doing the job. Is that your position? Let me state my position to make sure that I understand you correctly. I'm not sure if we're seeing eye-to-eye on this. So my position is that we must meet the prima facie elements first. And the fourth element is, was my client replaced with someone significantly younger than her who was less qualified or at least equally qualified? And the judge said we failed to do that. Well, suppose that they replaced someone that was a teenager who was not qualified and couldn't do the job. But they fired her in good faith. Assume for the reason I don't want you to capitulate your argument at this point, but assume for the moment that they fired her because she was stealing. I know she wasn't, but assume that for argument's sake. She's stealing and they discharge her. Then they hire someone who's incompetent, younger than her, and all the rest. But they didn't fire her for an egregious violation such as stealing. They fired her out allegedly for performance. I'm asking you to assume that. They claim they fired her because she wasn't doing the job. I know they didn't fire her because she was stealing. Now, is it your position that if someone is not doing the work, that they can't fire her unless they replace her with someone who's got her qualifications? Generally speaking, certainly not. My contention before this Court would be if we make the argument then that they're asserting she's generally not qualified, we've put enough evidence in the record to suggest she is, and worst-case scenario, we have a genuine issue of material disputed fact that needed to go to the jury. Well, all right. I think we're not we're speaking, but we're not communicating. Let me just change it somewhat to this point. What evidence did you put in the record that she was, aside from her allegations, that she was qualified and that this was not a good faith decision that they made to discharge her? She was qualified for the position beginning, again, as Judge Bybee indicated. She does have 17 years with the bank. She does have 15 years of direct experience as an assistant banking center manager. She rose through the ranks and was promoted quite quickly to ABCM. She does have a virtually blemish-free record, notwithstanding the last year, which we're alleging is pretextual, which is a secondary argument. She was hand-selected to assist branches with preparing for the audits. She was also told, by the way, in her first disciplinary notice on February 23rd, that the bank itself believed that she was more than capable of exceeding its minimum expectations as set forth. So certainly one could draw the inference that capable is qualified. So there are disputed facts here concerning her qualifications. Do you want to make one point about being a Spanish speaker? I did, Your Honor. I think I'd like to reserve that for rebuttal if I could. I'd like you to answer my question. Certainly, Your Honor. So if they make Spanish speaking ñ here's what happens. Spanish is ñ nowhere in the record does it indicate that Spanish is, in fact, a minimum qualification for the position. Now, certainly the bank is allowed to establish whatever qualifications it wants for the position. But the issue here is they terminate my client, then turn around later and hire Ms. Yaunin and state that she's more qualified simply because she has Spanish. If this Court allows employers to add qualifications and change qualifications post-termination to simply then assert, well, this person is differently qualified, better qualified, then no plaintiff would ever make out its prima facie case. They would simply replace with someone who had different qualifications and state that's what we're looking for now. So that's a huge distinction here because this ñ Although it doesn't seem ñ it doesn't seem unreasonable in this day and time, and given the location of this branch, for Bank of America to say, well, we had to fire her for cause, we're sorry we had to do that. If we're going to hire somebody else, it would be really convenient for us to have somebody who is bilingual in this area of the city. Agreed. And at a minimum, then, my client would be equally qualified as the replacement, albeit with a different set of experience and background. But to say that she's not qualified, if we agree that there's a disputed fact ñ I don't think there was any finding that your client wasn't qualified. There was a finding that she was not at least qualified. I thought the question was that the replacement, you have to show that the replacement was not as qualified as your client. Or equally qualified. So we are asserting that they are equally qualified. Thank you, Counsel. I will restore some of your time. We took up a lot of it with questions. We'll hear from the Employers' Counsel. May it please the Court. My name is John Frye, and I represent the Appellee Bank of America in this matter. I'd sort of like to pick up where the Court left off in its questioning of Appellant's Counsel with respect to the fourth element of the prima facie case. What the district court appropriately found was that the plaintiff had not put in any evidence into the record comparing her own qualifications to her replacements other than the relative length of their respective employment with Bank of America. The appellant was there 17 years. Her replacement, for lack of a better term, Ms. Yunand, was there for three years. However, and that was the extent of the evidence, the operative undisputed fact here that plaintiff didn't dispute below and hasn't disputed is that the position of Assistant Banking Center Manager changed fundamentally in August of 2004 to require this greater emphasis on lobby leadership, lobby management, seeing your staff and the branch through the eyes of the customer, minimizing their wait times, being out on the lobby floor. In light of that significant realignment of the position, Ms. Yunand, who was already employed at the bank and was already employed as an assistant manager at another branch, and the plaintiff, Ms. Swan, actually had an equal amount of time in that role. The only additional evidence in the record with respect to Ms. Yunand's qualifications indicate that she was actually superior in her qualifications to Ms. Swan, not only because of her bilingual skill set, which it's undisputed in the record this particular branch had a heavily Hispanic customer base and that that was a skill that suited that customer base, but a second reason that was put in the record by the bank and not disputed is the fact that in her prior experience as an assistant manager, after the change to lobby leadership, she had prior experience in a branch with heavy foot traffic where lobby leadership was very important. That was the reason for bringing her in to replace Ms. Swan in this particular branch. I guess I'd like to move, assuming the plaintiff, for sake of argument, could meet that prima facie case hurdle, I would like to briefly address whether or not, if we get to the third stage, there is any evidence that this employment decision was a pretext for unlawful age discrimination. And, Judge Cowan, as you pointed out, this court isn't an employment agency or a super personnel department. The law doesn't require this court to review the wisdom of the bank's decision to terminate Ms. Swan, even when, as this court has described, those decisions might appear to be, as you said, in Villaremo v. Aloha Island Air, foolish, trivial, or even baseless. The district court's role and this court's role is to confirm that that decision was not a pretext for unlawful age discrimination. And appellant has argued all along that this is purely a circumstantial evidence case. There is no direct evidence of age discrimination here. As a result of it being a circumstantial evidence case, that evidence has to be specific and substantial, as this court has held, that age was the but-for cause of Ms. Swan's termination. Now, Plaintiff's ultimate argument is her disagreement with the fairness of the bank's decision to terminate her. But there is simply no evidence in the record to controvert Mr. Newbell's testimony that he honestly believed, based upon not only reports he was getting from Ms. Swan's other managers in the branch, but based upon his own observations of her performance in the branch. Any other employees besides Mr. Newbell that were involved in the decision-making process? The decision to answer your question, the decision was his. I'm sure that others were involved, the branch manager. But he had the final say. That's correct. And Plaintiff hasn't disputed that he was the decision-maker with respect to the decision to terminate her based on his observations and based on reports that he was receiving from other supervisors. So the metaphysical accuracy of his observations isn't even the issue. It's whether or not he honestly believed that her performance was deficient to the point it warranted termination. In fact, in this case, Plaintiff admitted that she has no reason to believe that this decision was a pretext for age discrimination. When her deposition was taken, and this is on page 49 of the supplemental excerpts of record, the question was asked, do you have any reason to believe that Mr. Newbell wanted to terminate you because of your age? Her answer, no, not Tom, which sort of begs the question why Plaintiff has chosen to press an age claim when she concedes that she has no reason to believe that the decision-maker was making that decision as a pretext for unlawful age discrimination. If I could turn briefly, staying on the age claims, to the statute of limitations issues. First, on the federal age discrimination claim, the bank presented in its opening brief the reasons why this claim under this Court's precedent in Payen v. Aramark, which Judge Bybee authored the opinion in, Ms. Swan's claim under the Federal Age Discrimination Act is untimely. In her reply brief, the appellant's only response to that was not to address the merits of why, in fact, the federal claim was untimely, but simply to argue that the bank is precluded from raising that defense because we didn't file a cross-appeal on that issue. However, that flies in the face of this Court's clear precedent. In fact, the cases cited by the appellant in her reply brief for that proposition actually say the exact opposite, particularly Ingelson v. Burlington Northern, one of the cases cited in the reply, considered this very issue. The Ninth Circuit affirmed the trial court's ruling based on an expired statute of limitations, finding that that was appropriate to do even though the appellee had not filed a cross-appeal on the statute of limitations. And in that case, the trial court had actually rejected the statute of limitations argument. That didn't happen here. What the district court found in this case was that it didn't need to reach the statute of limitations argument because it concluded that not only had Ms. Swan failed to make a prima facie case of age discrimination, but she had also failed to establish any pretext at the third stage of that inquiry. So it's clearly appropriate for this Court to consider that statute of limitations defense because the bank isn't seeking to modify the judgment as entered in any way. It can affirm the judgment on any basis supported by the record. Turning to the statute of limitations issue on the state law age discrimination claim, how the state scheme works is different than how the federal scheme works. And plaintiff's claim under state law is clearly time-barred. What the Nevada statute provides is that if a plaintiff wishes to file a claim in court based on a violation of the state anti-discrimination statute, that claim has to be filed within 180 days. She's filed nothing that, in her brief, there's no argument made that that is not barred. In the reply brief? I think it was — I forget which brief it was, but I didn't see anything that — she didn't sign a case that showed it was timely. That's correct, Your Honor. And, in fact, the statute is abundantly clear, the state statute, and the case law interpreting it, that an aggrieved party has 180 days to file a claim in court. They do first have to file an administrative charge, but the statute further provides that the 180-day statute of limitations is told during the pendency of that charge before the administrative agency. Here, for the state law claim, plaintiff waited 178 days. That's our — I agree. That's our position, Your Honor. Moving on to the Family and Medical Leave Act claim. As this Court has held, there's no — well, let me — I guess let me back up. Plaintiff's argument here, again, is based purely on circumstantial evidence, that the medical leave of absence that she took in the summer of 2005 is somehow causally connected. That was the — one of the reasons that she was terminated approximately four months later. This Court has held that relying solely on circumstantial evidence in support of such a claim is permissible. However, this Court has also said there's no bright line as to some — when your circumstantial evidence is based purely on temporal proximity, timing, there's no bright line of a period of time that's either per se too long or per se too short. That's the Coles Alter v. City of Salem case. However, the Court has also said that for — to permissibly infer some sort of causal connection based on timing, it has to be on the heels of the protected activity. That was via Remo. And the Supreme Court has said in Breeden v. Clark County School District it has to be fairly soon after the protected activity. Here, Ms. Swan took her medical leave. She returned on September 9, 2005. She was terminated on December 30, 2005. Under the facts of this case, which are — which are briefed in our brief, that's simply too long of a period of time. And even if it wasn't, although it is, there's another undisputed fact that further breaks any possible inference of a causal connection between her medical leave and her ultimate termination, and that is the fact that the bank advised Ms. Swan in writing that it was concerned about her performance before she ever took medical leave and before she ever even told the bank she intended to take medical leave. Is there any argument — any merit of Swan's argument that the 2005 action plan was merely a reminder of her duties rather than a disciplinary notice that was given to her? There is no merit, Your Honor. That — that assertion — I mean, that's her position. That assertion is belied by the plain face of the document and the record. And this is page 112 of the supplemental excerpts of record. And — What page is it, Counselor? Page 112 of the supplemental excerpts. The document concludes by saying, What's wrong with looking at that as merely a recitation of duties that you are to perform? You know, I've been employed, and they tell you, look, we want you to shape up in this area and that area. Why can't — why look at it as a disciplinary matter when you could say it's just a recitation of how we want you to perform the job? Whether it's characterized as a disciplinary document or a written job expectation, the undisputed fact is that it says you are not performing at the level expected to be successful. Here are the areas you need to improve. This — this concern conveyed to her about her level of performance was communicated before she ever informed the bank she needed to take medical leave. So the fact that she was ultimately terminated about 10 months after this document — for many of the same reasons identified in this document — breaks any sort of causal connection between her intervening medical leave and the assertion that she was ultimately fired because she took medical leave. And, in fact, just to sum up on the FMLA point, this Court's been clear that, again, on the timing issue, simply because an employee requests leave or takes leave doesn't — doesn't provide them with some sort of get-out-of-jail-free card that precludes the bank from continuing to follow up on legitimate performance concerns. The bank isn't required to back off from these concerns simply because of the intervening leave. Just briefly on the — on the fourth cause of action alleged by the plaintiff on which summary judgment was granted was the cause of action for slander. And originally in the complaint, the basis for that cause of action was that apparently during the summer — during her medical leave, Ms. Swan was interested in transferring to a branch in Austin, Texas. That market manager, Mr. Neubel's equivalent, called to get information about her from the branch manager in Las Vegas, and that woman allegedly said, she's on final written warning. We pointed out in arguing for summary judgment in the district court that the plaintiff had failed to establish a prima facie case of slander, first of all, because she hadn't demonstrated that the statement was not true or substantially true. Whether or not Ms. Martin used the qualifier final is irrelevant, because it's undisputed that Ms. Swan was on an action plan at that time, and under bank policy, as Mr. Neubel testified and wasn't disputed, if an employee is on any form of written warning, they are ineligible for a transfer. So the qualifier final is irrelevant. Secondly, the bank established that this communication was made pursuant to a corporate intra-party privilege. And once that was established, it was the plaintiff's burden to come forward with evidence that that privilege was abused and that the communication was made with malice, in fact. That showing was never made, and the district court appropriately entered summary judgment, not just for that reason, but for that reason. And Ms. Martin did simply restated her age discrimination claim and said everything they said about me was a lie, therefore, it's slanderous, without identifying which communication she's referring to or to whom it was published. So I see that my time is up. Thank you for your time. Thank you, counsel. Ms. Gotham, you have some rebuttal time remaining. Thank you, Your Honor. I will rest on our briefs for the state issue and the slander issue, if we could. I want to briefly rebut the Family Medical Leave Act issue, and then summarize, if I may, our prima facie issue. First of all, I would also like to point out that this is not an appeal of a trial. This is an appeal of a summary judgment. And so we need to establish, of course, that a reasonable jury could draw inferences from the evidence on the record. And from an FMLA perspective, if you look at the timing, the time of the February 23rd, it's already disputed. Is it truly discipline, or is it a reminder of what your job responsibilities are? But that notwithstanding, when she officially requested her FMLA in May, yes, she was terminated in December. Yes, those dates are separated by five months. However, the mock audit, that is her second piece of discipline in the record, occurred within 30 days of her request for the leave. The mock audit was specifically called for at that time by the bank. She's disciplined for that. They tell her, shape up your audits or ship out. She goes out on her FMLA leave. She comes back in September. She's employed, she's working, rather, for approximately 15 days before her third quarter review is due. She gets a lower mark, having only been there for 15 days under a different supervisor. And then, lo and behold, when the real audit occurs, the actual audit, which is at the heart of the level of these issues, they pass with flying colors, and yet 30 days later she's also terminated. I think if you look at it in total, temporally and causally, she's never taken FMLA leave before, and now she's being disciplined for her, the mock audit. One of the issues that we asserted also is her, the scheduling issue, and the bank asserts that that's not a significant issue to her job. Well, that kind of supports our argument of pretext, that the facts just kind of intertwine a bit. It's difficult to keep them separated. At one hand, it's a significant issue. At another hand, it's an insignificant issue. And when you take all of these questions in total, there is a reasonable, there's not a reasonable jury out there that would not infer something else is going on here. It just doesn't make sense. So from an FMLA perspective, I think looking at it in total is the better approach. Counsel, you have exceeded your time, but you may briefly wrap up if you would like. Summarize the prima facie? Yes. Thank you, Your Honor. I appreciate that. The prima facie issue really is our key element, Your Honor, and all of the questions are addressing that one issue. She was replaced by someone significantly younger, and we argue equally qualified. If she wasn't qualified based on her performance, then that in and of itself is a disputed issue. It's a question of fact for the jury. I think the pretext speaks for itself in our briefs as well. Thank you. Thank you, counsel. We appreciate the arguments. The case is submitted, and we will take about a 10-minute recess before the remainder of the cases. Thank you.
judges: Cowen, Graber, Bybee